**Darrell W. HARMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00318–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 13, 1994.

Rehearing Overruled Nov. 23, 1994.

Discretionary Review Refused March 15, 1995.

Michael B. Charlton, Houston, for appellant.

J. Sidney Crowley, Richmond, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

A jury found appellant guilty of five counts of theft, and the trial court assessed punishment at ten years confinement and a fine of $100,450 payable to the complainant. In six points of error appellant complains of the insufficiency of the evidence, an erroneous definition in the indictment, use of extraneous offenses without prior notice, and the trial court's failure to hold a hearing on appellant's motion for new trial. Because of the trial court's failure to assess punishment separately on each count for which the jury found appellant guilty, we affirm the judgment of the trial court only as to count one and dismiss the appeal as to all others for lack of jurisdiction.

In reviewing the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find every element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In this light, we recite the following facts. Tim Collins, the complainant in the case, testified that he met appellant in July of 1985 through Alan Hoover, a mutual friend of both appellant and Collins. At the initial meeting between these three men at Hoover's home in Houston, appellant explained in detail to Collins an investment opportunity concerning the purchase of large blocks of tickets to concerts at the Summit, which tickets could be bought directly from Ticketron in Florida upon their printing and resold at a higher price to the general public. Appellant told Collins that he had an arrangement with the vice-president of Ticketron in Fort Lauderdale, Florida by which a "ticket runner" would arrive at Fort Lauderdale with a large amount of cash for which the vice-president of Ticketron would exchange the just printed concert tickets. Appellant also described to Collins how he could purchase "spots," or groups of tickets which would become available shortly before a performance.

At this first meeting, Collins gave appellant a check for $75,000 to cover his participation in the investment scheme for three months. Collins opened an account in Houston in both his and Hoover's name to which he could wire money from Pennsylvania and on which Hoover could obtain the money to give to appellant to effect the purchase of the tickets. A former employee of Ticketron testified, however, that the company had no

operations or personnel located in Florida in 1985 and that because Ticketron did not print a single ticket until it was sold at a sales location, a scheme such as the one proposed by appellant to Collins was not possible. An employee at the Summit, Mike McGee, had never heard of the term "spots," but stated that the Summit would sometimes hold seats pending the installation of a show and then sell any extra seats that might become available as a result of the configuration of the stage. McGee confirmed that Ticketron had not had any operations in Florida since 1973.

Testimony of other witnesses revealed that appellant had made similar representations to them concerning a connection with Ticketron in Florida enabling them to acquire concert tickets before release to the general public to be resold at a higher price. One witness had lost $591,000 dollars in the venture, and another witness testified that the total loss of money of his group of friends participating in the scheme was $1.1 million dollars. Collins made six wire transfers of money to Houston to participate in appellant's investment opportunity, which transfers comprise six of the seven paragraphs in the indictment.

However, before addressing the substance of appellant's argument, we must discuss a sentencing error at trial. Although there is not a specific point of error on this issue, appellant directed our attention to this matter through his mentioning in a footnote that should we find the evidence insufficient on any count, we must remand for a new punishment hearing. In determining the merit of this argument, it became evident that the trial court erred in failing to sentence appellant properly in accordance with the Texas Penal Code provision that requires a separate sentence be assessed for each offense that arises out of the same criminal episode and that is prosecuted in a single criminal action. TEX.PENAL CODE ANN. § 3.03 (Vernon 1974).[1] At the time of the commission of the alleged offenses, the Penal

Code defined a criminal episode as the repeated commission of an offense under Title 7, which title includes offenses against property, of which theft is one such offense. TEX.PENAL CODE ANN. § 31.03 (Vernon 1974).[2]

The court of criminal appeals has addressed the identical situation we face in the instant case and used the doctrine of carving to presume that the one sentence assessed for numerous convictions refers to the first count of the indictment. E.g., Robinson v. State, 553 S.W.2d 371, 372 (Tex.Crim.App. 1977); Parks v. State, 553 S.W.2d 114, 116 (Tex.Crim.App.1977). Because this reasoning results in finding a proper sentence was assessed only on the first count of the indictment, we must find no proper sentence exists for the other convictions. See Robinson, 553 S.W.2d at 372. Therefore, any appeal relative to these other counts must be dismissed for lack of jurisdiction. Id.; see also White v. State, 543 S.W.2d 130, 132 (Tex.Crim.App. 1976) (dismissing appeal for lack of jurisdiction as to counts for which no sentence assessed). We thus have no jurisdiction to address the sufficiency of the evidence points on counts two through six which comprise points of error one and three and dismiss the appeal as to these counts. Because the doctrine of carving requires that we find the ten-year sentence refers to the first count, we will address the sufficiency of the evidence point of error as to this count which appellant frames as his second point of error.

Appellant's second point of error refers to the sum of $75,000 that Collins gave to appellant at the initial meeting between the three men. Appellant asserts the evidence shows that Hoover's representations, not appellant's, were the ones that caused Collins to contribute money. We find, however, that the record amply supports the jury's finding appellant's representations were the ones Collins relied on in making the decision to turn over his money. For example, Collins testified that the first detailed conversation regarding the investment

1. Amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3592 (current version at TEX.PENAL CODE ANN. § 3.03 (Vernon 1994)).

2. Amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900. § 1.01, 1993 Tex.Gen.Laws 3586, 3636 (current version at TEX.PENAL CODE ANN. § 31.03 (Vernon 1994)).

scheme occurred when the three met at the airport upon Collins's arrival from Pennsylvania. In addition, Collins's testimony shows that it was appellant who described to him the procedure by which the tickets would be acquired from appellant's connection with Ticketron in Florida. Appellant was also the person who assured Collins that the scheme was legal when Collins specifically asked about the legality of the operation. Collins then wrote to appellant, not Hoover, a check for $75,000 as an initial investment, and appellant endorsed the check. From this testimony it appears clear that there was sufficient evidence to support the jury's finding that appellant made the representations to Collins that induced Collins to issue the initial check to appellant. Point of error two is overruled.

■ Point of error four complains of the failure of the trial court to submit in the application paragraphs the theory of deception relied on by the state to convict appellant. The court's charge to the jury instructed the jury as to the definition of deception. Appellant's complaint, however, is that the definition was not repeated in each application paragraph. Appellant cites no authority to contradict the controlling case of *Milton v. State,* 652 S.W.2d 958 (Tex.Crim.App.1983), but instead cites *Jones v. State,* 815 S.W.2d 667 (Tex.Crim.App.1991), which merely states the general rule that an application paragraph contains the authorization to convict the accused and that the sufficiency of the evidence must be assessed according to the entire charge. *Jones,* 815 S.W.2d at 670. In the instant case, however, as in *Milton,* the application paragraph did not require the theory of deception in order to authorize a conviction of theft because the means by which a defendant unlawfully appropriates property is not an element of the offense of theft. *Milton,* 652 S.W.2d at 959. Point of error four is overruled insofar as it applies to count one of the indictment.

■ Point of error five asserts error in the prosecution's failure to give notice to appellant of its intent to use in its case against appellant evidence of prior extraneous offenses. Rule 404(b) of the Rules of Evidence permits the use of extraneous offenses but requires the accused to make a timely request of the state of its intent to introduce the extraneous offenses into evidence. Tex. R.Crim.Evid. 404(b). Appellant asserts his inclusion of this request in his motion for discovery and inspection constitutes a timely request within the meaning of Rule 404(b). However, in *Espinosa v. State,* 853 S.W.2d 36, 39 (Tex.Crim.App.1993), the court of criminal appeals held that when a party relies on such motion as the request for prior notice referred to in Rule 404(b), that party must secure a ruling on the motion. *Espinosa,* 853 S.W.2d at 39. Because appellant failed to secure a ruling on his motion, we overrule point of error five.

■ Point of error six asserts error in the trial court's failure to conduct a hearing on appellant's motion for new trial. Appellant asserts the affidavit attached to the motion for new trial suggested that reasonable grounds existed to believe that jury misconduct occurred warranting a new trial. The information of potential misconduct came to appellant by way of a private investigator, Jim Cooper, whose affidavit, along with that of trial counsel, was attached to the motion for new trial. An affidavit is required with a motion for new trial when a party is attacking the jury's verdict on matters outside the record. *Hicks v. State,* 75 Tex.Crim. 461, 476, 171 S.W. 755, 763 (Tex.Crim.App.1914). Because jury misconduct constitutes a ground of attack outside the record, a motion for new trial on this basis requires the affidavit of "a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits." *Dugard v. State,* 688 S.W.2d 524, 528 (Tex.Crim.App.1985). Whether the trial court must hold a hearing on the motion for new trial depends on whether the affidavit succeeds in showing that reasonable grounds exist for believing jury misconduct occurred. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App.1993).

■ In the instant case, however, we need not reach the merits of appellant's argument because of the inadequacy of the affidavits. In order to constitute an affidavit, an affiant must swear that the statements

contained therein are true. *Esquivel v. State*, 595 S.W.2d 516, 523 (Tex.Crim.App. 1980), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Neither affidavit meets this requirement. In addition, the court of criminal appeals has held that a private investigator may submit an affidavit attesting to the juror misconduct, but that such affidavit will fail if it does not contain "a recitation that the investigator asked the jurors to make an affidavit as to the misconduct and they refused to do so." *Smith v. State,.* 437 S.W.2d 835, 839 (Tex.Crim.App. 1969). If a juror cannot make the affidavit, the rule allows a person in a position to know the facts to make the affidavit; however, the courts have preferred that a juror make the affidavit, expressing this preference by requiring that when the juror is not the affiant, mere unavailability of the juror is not acceptable to justify the affidavit of another person. The juror must have refused to make the affidavit regarding the juror misconduct and the affidavit must state that resort was had to another individual in a position to know the facts because of the juror's refusal to submit the affidavit. *See Stephenson v. State*, 494 S.W.2d 900, 909 (Tex.Crim.App. 1973) (giving example of how to prepare affidavit when juror unavailable that would include affidavit of person in position to know facts accompanied by affidavit of appellant stating why juror could not give affidavit). Because both affidavits attached to the motion for new trial fail as to form, appellant presented nothing to the trial court that would have warranted the trial court's granting a hearing. Point of error six is overruled.

The judgment of the trial court is affirmed only as to count one of the indictment, and this appeal is dismissed as to all other counts for the reasons set forth above.