COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                          NO.
02-07-360-CR

 

 

ANTHONY RYAN CEDILLO                                                    APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

         FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I. 
Introduction

In six points, Appellant Anthony Ryan Cedillo
appeals his conviction for possession of a controlled substance of four grams
or more, but less than two hundred grams, of methamphetamine.  We affirm.

 








II. 
Factual and Procedural History

Cedillo was the front passenger in a car that was
stopped by gang unit officers for a traffic violation.  Officers Guitterrez and Kimball had followed
the car because it came from a Aknown
gang house,@ and when the officers activated
their vehicle=s red and blue lights, they saw
the driver and Cedillo make rapid movements and lean forward inside the
car.  As Officer Guitterrez approached
the car, he heard a Athud@ on the
floorboard and tapped the window for the driver to open the door.  When the driver did not respond, Officer
Guitterrez opened the driver=s door
and saw a chrome pistol on the floorboard.

Officer Kimball removed Cedillo from the car and
discovered he had a silver Foley knife clipped to his jacket pocket.  During a safety sweep of the front passenger
area of the car, Officer Kimball found two bags containing what was later
determined to be 54.99 grams of methamphetamine Ashoved@ between
the front passenger seat and the center console, beside where Cedillo=s left
leg had been.








Officer Kimball arrested Cedillo for possession
of a controlled substance.  During a
search incident to the arrest, Officer Kimball found in Cedillo=s rear
pocket a black leather pouch containing a digital scale of the type used for
weighing narcotics, empty Ziploc bags of the type commonly used for packaging
narcotics, and a red straw of the type commonly used to move the drug methamphetamine
from one baggie to another.

At trial, Cedillo moved to suppress all the
evidence found in the car, arguing that the officers illegally stopped the
car.  The trial court found that the
officers had probable cause to stop the car based on a traffic violation and
denied the motion to suppress.  The jury
found Cedillo guilty as charged, sentenced him to sixty years in prison, and
assessed a $3,500 fine.  This appeal
followed.

III.  Legal
and Factual Sufficiency 

In Cedillo=s first
and second points, he asserts that the evidence is legally and factually
insufficient to sustain his conviction for possession of a controlled
substance.

A.  Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Bowden v. State,
166 S.W.3d 466, 470 (Tex. App.CFort
Worth 2005, pet. ref=d).  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily restrict
the State=s theories of liability, and
adequately describes the particular offense for which the defendant was
tried.  Gollihar v. State, 46
S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination
of the weight to be given contradictory testimonial evidence because resolution
of the conflict Aoften turns on an evaluation of
credibility and demeanor, and those jurors were in attendance when the testimony
was delivered.@ 
Johnson, 23 S.W.3d at 8. 
Thus, we must give due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Id. at 9.

B.  Analysis








Cedillo claims that the record does not establish
that he had actual or constructive possession of any controlled substance.  Possession involves the exercise of control,
management, or care over the controlled substances.  See Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005). 
Standing alone, Cedillo=s
presence at the location of the drugs is insufficient to establish this
element.  Evans v. State, 202
S.W.3d 158, 162 (Tex. Crim. App. 2006). 
However, when combined with other evidence, presence or proximity may be
sufficient to establish the requisite proof of that element.  Id. 
This other evidence, or Aaffirmative
links,@ are
weighed not necessarily by the number of them, but by the Alogical
force@ when
taken together.  Id.  at 161B62.  The links, which are not a litmus test,
include (1) the defendant=s presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant=s
proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia were present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the place
where the drugs were found was enclosed; (13) whether the defendant was found
with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt.  Id.
at 162 n.12.  








The State=s
evidence consisted of the following: 

$               
Cedillo was the front passenger in a car stopped by officers for a
traffic violation after it left a known gang house. 

 

$               
Cedillo and the driver began making rapid movements and leaning
forward inside the car after officers pulled over the car and activated their
vehicle=s red and blue lights.

 

$               
When Officer Guitterrez approached the car, he heard a Athud@ to the floorboard.

 

$               
The officer tapped on the window for the driver to open the door, but
the driver did not comply.

 

$               
Cedillo and the driver continued moving around inside the car, so
Officer Guitterrez opened the driver=s door.

 

$               
The officer saw a small chrome pistol on the floor board when the
driver began exiting the car.

 

$               
Cedillo had a silver Foley knife clipped to his jacket pocket when
Officer Kimball removed him from the car.

 

$               
Officer Kimball found two bags containing what was later determined to
be 54.99 grams of methamphetamine Ashoved@ between the front passenger=s seat where Cedillo was
sitting and the center console next to where Cedillo=s left leg had been.

 

$               
Officer Kimball found in Cedillo=s right rear pocket a black leather pouch
containing a digital scale of the type used for weighing narcotics, empty
Ziploc-style bags commonly used for packaging narcotics for street sales, and a
red straw commonly used to move methamphetamine from one baggie to another.

 

$               
Officer Kimball found a Amisdemeanor amount@ of marijuana in Cedillo=s left front pocket.








In sum, the evidence indicated that Cedillo
possessed the controlled substances because Cedillo was closest to the
methamphetamine, he had immediate access to the narcotics, his leather pouch
contained items used by narcotics dealers, and other drugs were found on his person
when he was arrested.  Considering the
foregoing, we hold that any reasonable trier of fact could have found the
essential element of control, management, or care beyond a reasonable doubt and
that the evidence is therefore legally sufficient.  

Likewise, considering the foregoing, we cannot
say that the factfinder=s determination is clearly wrong
and manifestly unjust or that any conflicting evidence so clearly outweighs the
evidence supporting the conviction so that the factfinder=s
determination is manifestly unjust. 
Therefore, the evidence is factually sufficient, and we overrule Cedillo=s first
two points.

IV.  Motion
to Suppress the Vehicle=s
Contents

In Cedillo=s third
point, he asserts that the trial court erred by overruling his motion to
suppress the contents of the vehicle.  He
argues that the stop of the car was Aillegal@ because
Cedillo was not involved in any suspicious activity when stopped by the police.

A.  Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total
deference to a trial court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002). 

B.  Analysis








It is virtually axiomatic that Officers Kimball
and Guitterrez had probable cause to stop the vehicle in which Cedillo was
riding if they witnessed the vehicle commit a traffic violation.  See State v. Gray, 158 S.W.3d 465, 469
(Tex. Crim. App. 2005); Goudeau v. State, 209 S.W.3d 713, 719 (Tex. App.CHouston
[14th Dist.] 2006, no pet.).  Texas
Transportation Code section 545.104(b) reads in part as follows: AAn
operator intending to turn a vehicle right or left shall signal continuously
for not less than the last 100 feet of movement of the vehicle before the turn.@  Tex. Transp. Code Ann. ' 545.104(b)
(Vernon 1999); Tucker v. State, 183 S.W.3d 501, 507B08 (Tex.
App.CFort
Worth 2005, no pet.) (affirming trial court=s
decision to deny motion to suppress where officer testified that driver did not
signal turn until he reached stop sign and saw officer, providing officer with
probable cause to stop the vehicle due to a violation of section 545.104).  

Here, the evidence revealed that the officers
witnessed the driver commit a violation of this statute. 

Q.  Okay. 
And at some point did that vehicle commit a traffic violation?

 

A [Officer
Guiterrez].  Yes.

 

Q.  What was that violation?

 

A.  It failed to signal prior to a hundred feet
asCas it approached the
intersection.

 

. . . . 

 

Q.  So after they committed a traffic violation,
what did you do next?

 

A.  Then me and Officer Kimball initiated a
traffic stop on that vehicle[.]

 

. . . . 

 

Q.  And they didn=t turn their turn signal
on; is that correct?

 

A [Officer Kimball].  Correct. 
They failed to signal at least a hundred feet before making the
left-hand turn.

 

We hold that the trial court did not abuse its discretion in denying
the motion to suppress, and we overrule Cedillo=s third
point.

 








V.  Motion
to Suppress Statement

In Cedillo=s fourth
point, he asserts that the trial court erred by overruling his motion to
suppress a statement taken by Deputy R.G. Amenderez in violation of article
38.22 of the Texas Code of Criminal Procedure. 
Specifically, Cedillo complains that he was not given the proper
warnings under the article and would not have given a statement if he had
understood that he could have terminated the interview.  Hence, he asserts that the trial court abused
its discretion in admitting his statement. 

A.  Background








Deputy Amenderez, a classification deputy
assigned to the confinement division of the Tarrant County Sheriff=s
Office, testified that his primary responsibility is gang intelligence, and
that he interviews inmates regarding their past and present gang involvement at
book-in and on an update basis. 
Photographing inmates= tattoos
is a routine part of the process.  He
testified that this information is used for the safety of the inmate, who might
be otherwise placed with rival gang members, and for the safety of jail
staff.           During
Cedillo=s
initial classification interview during the book-in process, he claimed
affiliation with the 21st Street gang.  A
week before the deputy testified at trial and after reviewing Cedillo=s
initial classification interview, Amenderez interviewed Cedillo because he was Aunsure
about the gang that he admitted being a member of, whether it was a local Fort
Worth street gang or a gang from another part of the area.@  During this interview, Cedillo told Amenderez
that he had been inactive in the 21st Street gang for eight years and had not
joined a prison gang.  Amenderez
testified that he then told Cedillo that the only thing he had left to do was
to photograph any tattoos Cedillo might have. 
At that point, Cedillo stated that he was a member of the Puro Tango
Blast gang since 2004.  He had two
tattoos related to this gang affiliation.

The remainder of Amenderez=s
testimony included a discussion of his job responsibilities, the reason for
inmate interviews and photographs, a discussion concerning the photographs of
the tattoos, and that Puro Tango Blast is a predator group, both in and out of
state prisons and county jails, that commits assaults, drug offenses, and
aggravated robberies.  Amenderez did not
testify concerning, nor did he question Cedillo about, his attorney or his
pending charges, the status of which were not known by Amenderez at the time of
the pretrial interview. 

B.  Analysis








Cedillo complains that the statements he made to
Amenderez were obtained in violation of article 38.22 of the Texas Code of
Criminal Procedure.  Among other things,
that article requires that certain admonitions be given to an individual before
statements that the individual makes can be used at trial.  However, the article is inapplicable to Aa
statement that does not stem from custodial interrogation.@  Tex. Code Crim. Proc. Ann. art. 38.22, '
5 (Vernon 2005).  AInterrogation
refers to words, actions, or questioning by the police that the police should
know are reasonably likely to elicit an incriminating response from the
accused.@  Pierce v. State, 234 S.W.3d 265, 272
(Tex. App.CWaco 2007, pet. ref=d).  AQuestions
normally attendant to arrest, custody, or administrative >booking=
procedure do not constitute >interrogation.=@  Cross v. State, 144 S.W.3d 521, 524
n.5 (Tex. Crim. App. 2004). 

As previously discussed, Amenderez=s
interview with Cedillo was not for purposes of interrogation, and in fact,
there was no discussion at all concerning any alleged offenses committing by
Cedillo or pending charges that had resulted in his incarceration, but rather
the discussion was part of the routine booking, classification, and
photographing procedure.  Hence, we hold
that Cedillo=s statements did not stem from
custodial interrogation and that article 38.22 was not implicated.








Cedillo also briefly asserts that article 38.21
of the Texas Code of Criminal Procedure was violated in that his statements to
Amenderez were not made Afreely and voluntarily . . .
without compulsion or persuasion.@  However, Cedillo cites no evidence to support
his assertion, nor is any contained in the record.  We overrule Cedillo=s fourth
point.

VI.  Rule
403 Objection

In Cedillo=s fifth
point, he asserts that the trial court abused its discretion  in overruling his rule 403 objection.  Tex. R. Evid. 403.  Cedillo argues that the testimony of
Detective Reynolds during the punishment phase Awas
unfairly prejudicial to [Cedillo] because it was used only to inflame the jury=s belief
that [Cedillo] had strong ties to gang activity since he was a juvenile.@  Among other things, rule 403 allows the
exclusion of relevant evidence if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Id.  

Assuming without deciding that the admission of
Reynolds=s
testimony violated rule 403, it was clearly harmless.  Cedillo objected to Reynolds=s
testimony on the basis of rule 403 on two occasions.  The first objection followed the question, AWas
there a reason this search warrant was assigned to the gang unit?@ and the
second objection followed the question, ADetective,
was there information that you had received in order for you to execute this
warrant . . . that [Cedillo] was involved in some gang activity?@








Because the error is not constitutional, we apply
rule 44.2(b), which reads, A[A]ny
other error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded.@  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v. State,
961 S.W.2d 639, 643 (Tex. App.CFort
Worth 1998, pet. ref=d).  In making this determination, we review the record
as a whole.  See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
An error does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson, 967 S.W.2d at 417. 

By the time Reynolds testified during the
punishment phase regarding the reason for the search warrant being assigned to
the gang unit and regarding  information
in connection with serving the warrant that Cedillo was involved in some gang
activity, the following evidence had already been admitted:

$               
Cedillo claimed membership in the past in the 21st Street gang and
later in the Puro Tango Blast gang.

 

$               
Cedillo had gang membership tattoos and photographs of these tattoos
were admitted into evidence.

 

$               
Puro Tango Blast=s typical gang
activities.

 

$                                                                                               
Cedillo had been arrested in the instant case after leaving a known
gang house.    

 








$               
Cedillo=s multiple prior
convictions, including possession of marijuana in 1999, interfering with public
duties in 2002, and possession of methamphetamine in 2002. 

 

$                                                                           
Reynolds was a member of the gang unit at the time he executed a
warrant for Cedillo in March 1998, when Cedillo was sixteen.         

 

Considering the foregoing evidence and the
standard of review for non-constitutional error, any error in admitting
Reynolds=s
testimony was harmless. Therefore, we overrule Cedillo=s fifth
point.

VII. 
Motion for New Trial

In Cedillo=s sixth
point, he asserts that the trial court erred by not granting his motion for new
trial because of nonevidentiary documents that were submitted to the jury to
use during deliberation and for Aother
reasons.@  Specifically, Cedillo asserts that he is
entitled to a new trial because 

the verdict was decided
by lot or in a manner other than fair expression of the jurors= opinion; evidence
tending to establish [Cedillo=s] innocence was intentionally withheld thus
preventing its production at trial; the jury received other evidence after
retiring to deliberate; and the jury engaged in such misconduct that [Cedillo]
did not receive a fair and impartial trial.

 








He also alleges that a new trial was warranted because of the
admission of evidence of his gang affiliation during the guilt-innocence phase
of the trial and because of the denial of his motions to suppress, which we
have previously addressed.  He additionally
complains that the State failed to prove beyond a reasonable doubt an
aggravated assault case that was admitted during the punishment phase.








We review a trial court=s denial
of a motion for new trial under the abuse of discretion standard.  State v. Herndon, 215 S.W.3d 901, 906B07 (Tex.
Crim. App. 2007).  However, if a party
provides no argument or legal authority to support its position, the appellate
court may properly overrule the point or points as inadequately briefed.  Tex. R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex.
Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001); Mosley v.
State, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998), cert. denied, 526
U.S. 1070 (1999).  And if a party does
not refer the appellate court to the pages in the record where the errors
allegedly occurred, the appellate court may also properly overrule those points
as inadequately briefed.  Lawton v.
State, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), cert. denied, 519
U.S. 826 (1996), overruled on other grounds, Mosley, 983 S.W.2d at 263
n.18; Alvarado v. State, 912 S.W.2d 199, 210 (Tex. Crim. App.
1995).  Cedillo fails to make citations
to the record to support his arguments that the verdict was decided by lot or
in a manner other than fair expression of the jurors=
opinion, that the State intentionally withheld exculpatory evidence, that gang
affiliation evidence was improperly offered and admitted during the
guilt-innocence phase of trial, and that the aggravated assault case was not
proven beyond a reasonable doubt.  He
also fails to cite legal authority to support these complaints, notwithstanding
his citations to Mullins v. State, 37 Tex. 337, 339B40, 1873 WL 7267,
at *3 (1872), and State v. Gonzalez, 855 S.W.2d 692, 694 (Tex. Crim.
App. 1993), to support the statement that trial courts have the discretion to
grant new trials in the interest of justice.[2]  See Tex. R. App. P. 38.1(h); Tong, 25 S.W.3d at 710; Mosley, 983
S.W.2d at 256; Lawton, 913 S.W.2d at 554.  Therefore, we overrule these portions of
Cedillo=s sixth
point.








With regard to his contention that the jury
engaged in misconduct such that he did not receive a fair and impartial trial,
apparently, the jurors inadvertently saw a document labeled ADefendant=s
Exhibit No. 6,@ which was not admitted into
evidence, during the guilt-innocence phase. 
The exhibit is a Setting Plea Offer Acknowledgment dated September 12,
2007, in which the State recommend a plea bargain offer of ten years=
confinement for the offense of aggravated assault.  The exhibit does not state that Cedillo
admitted any culpability for the charge. 
On September 14, 2007, the jurors requested the exhibit during the
punishment phase, and the trial court informed them that it had not been admitted
into evidence.








Cedillo alleged jury misconduct in his motion for
new trial.  To his motion, he attached a
copy of the jury note; the trial court=s
response to the jury note; a letter from the prosecutor explaining what she
thought had happened[3];
and a copy of Defendant=s Exhibit 6.  Cedillo=s motion
contained no supporting affidavits.  See
Harmon v. State, 889 S.W.2d 521, 524 (Tex. App.CHouston
[14th Dist.] 1994, pet. ref=d)
(stating that because jury misconduct constitutes a ground of attack outside
the record, a motion for new trial on this basis requires the affidavit of a
juror or some other person who was in a position to know the facts, or must
state some reason or excuse for failing to produce the affidavits).  

After the trial court denied his motion for new
trial without a hearing, Cedillo filed a document entitled, ABill of
Exception,@ in which he tendered
documentary evidence that he would have offered at a hearing on his motion for
new trial, including an affidavit from one of the jurors stating that the jury
received Defendant=s Exhibit No. 6 during the
guilt-innocence phase.








The State asserts that the trial court lacked
jurisdiction to consider the information attached to Cedillo=s bill
of exception, interpreting it as an attempted, belated amendment to Cedillo=s motion
for new trial.  See Tex. R. App.
P. 21.4.; Rivera‑Reyes v. State, 252 S.W.3d 781, 789 (Tex. App.CHouston
[14th Dist.] 2008, no pet.) (AThe
trial court does not have jurisdiction to rule on an untimely motion or
amendment.@).  But the trial court did not err by denying
Cedillo=s motion
for new trial regardless of the bill of exception=s
nomenclature.  See Tex. R. App. P.
21.3; Bustamante v. State, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). 

Rule 21.3(f) of the rules of appellate procedure
provides that a new trial must be granted Awhen,
after retiring to deliberate, the jury has received other evidence.@  Tex. R. App. P. 21.3(f).  A two-prong test must then be satisfied for
the defendant to obtain a new trial:  (1)
the evidence must have been received by the jury, and (2) the evidence must be
detrimental or adverse to the defendant. 
Bustamante, 106 S.W.3d at 743. 









Cedillo complains that because of the alleged
jury misconduct, he Areceived a disproportionate
sentence.@ 
However, the alleged misconduct, if any, occurred during the
guilt-innocence phase, not during the sentencing phase.  By the conclusion of evidence during the
sentencing phase, the jury was well-informed about the events leading to the
State=s plea
bargain offer on the aggravated assault charge that was the subject of the plea
bargain offer.  And Cedillo has not
explained how the evidence, one of his own exhibits, was detrimental or adverse
to him.  Therefore, Cedillo was not
entitled to a new trial under rule 21.3(f), nor to a new trial under rule
21.3(g), which requires a new trial be granted Awhen the
jury has engaged in such misconduct that the defendant did not receive a fair
and impartial trial.@ 
Tex. R. App. P. 21.3(f), (g).  We
overrule the remainder of Cedillo=s sixth
point.

VIII. 
Conclusion

Having overruled all of Cedillo=s
points, we affirm the trial court=s
judgment.

 

 

 

BOB
MCCOY

JUSTICE

 

PANEL: DAUPHINOT, WALKER,
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: December 18,
2008











[1]See Tex. R. App. P. 47.4.





[2]Cedillo alleges that the
State failed to supply the defense with allegedly exculpatory evidence, Ain violation of Brady
v. Maryland.@  When the State suppresses evidence favorable
to the accused, due process is violated where the evidence is material either
to guilt or punishment.  Brady v.
Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196B97 (1963); Wyatt v.
State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  To prevail, Cedillo must present evidence
that (1) the State suppressed or withheld evidence; (2) the suppressed evidence
would have been favorable to him; and (3) the evidence was material to his
defense.  Thomas v. State, 841
S.W.2d 399, 404 (Tex. Crim. App.1992); Nelloms v. State, 63 S.W.3d 887,
890B91 (Tex. App.CFort Worth 2001, pet. ref=d), cert. denied,
537 U.S. 960 (2002).  The record reflects
that the State attempted to provide the evidence to Cedillo, that neither party
could access it because both lacked the proper technology to view the tape, and
that neither party knew what was on the tape. 


Cedillo also
states that gang affiliation evidence Amay be only admissible as Article 37.07 evidence
in the punishment phase of trial.@  However,
such evidence may be admitted during the guilt-innocence phase if it is
relevant to motive, identity, intent, opportunity, preparation, plan, or
absence of mistake.  Trevino v. State,
228 S.W.3d 729, 734 (Tex. App.CCorpus Christi 2006, pet. ref=d).  Cedillo presents us with no citation to case
law or the record to support his argument beyond his reference to article
37.07.





[3]The prosecutor=s letter explains that
after the punishment trial, she and the judge spoke to the jurors and the
jurors asked what had happened to Defense Exhibit 6, which they had apparently
viewed during the guilt-innocence phase of the trial.  She stated that the foreman said, Ait didn=t affect our verdict or
anything, but we did see it,@ and that she thought that the exhibit might have
been passed to the jurors during Cedillo=s guilt-innocence case-in-chief, 

 

when you passed around
the information on Celedon=s car registration and impound release.  If Defense Exhibit 6 was lying on the end of
the court reporter=s desk closest to the
jury box, it could have been picked up with other evidence to be published to
the jury.  However, I do not know for
sure in what phase of the trial the Exhibit was passed or how it happened.  The exhibit was never sent into the jury room
in either phase.