

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-07-360-CR

ANTHONY RYAN CEDILLO                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In six points, Appellant Anthony Ryan Cedillo appeals his conviction for possession of a controlled substance of four grams or more, but less than two hundred grams, of methamphetamine.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Cedillo was the front passenger in a car that was stopped by gang unit officers for a traffic violation. Officers Guitterrez and Kimball had followed the car because it came from a "known gang house," and when the officers activated their vehicle's red and blue lights, they saw the driver and Cedillo make rapid movements and lean forward inside the car. As Officer Guitterrez approached the car, he heard a "thud" on the floorboard and tapped the window for the driver to open the door. When the driver did not respond, Officer Guitterrez opened the driver's door and saw a chrome pistol on the floorboard.

Officer Kimball removed Cedillo from the car and discovered he had a silver Foley knife clipped to his jacket pocket. During a safety sweep of the front passenger area of the car, Officer Kimball found two bags containing what was later determined to be 54.99 grams of methamphetamine "shoved" between the front passenger seat and the center console, beside where Cedillo's left leg had been.

Officer Kimball arrested Cedillo for possession of a controlled substance. During a search incident to the arrest, Officer Kimball found in Cedillo's rear pocket a black leather pouch containing a digital scale of the type used for weighing narcotics, empty Ziploc bags of the type commonly used for

2

packaging narcotics, and a red straw of the type commonly used to move the drug methamphetamine from one baggie to another.

At trial, Cedillo moved to suppress all the evidence found in the car, arguing that the officers illegally stopped the car. The trial court found that the officers had probable cause to stop the car based on a traffic violation and denied the motion to suppress. The jury found Cedillo guilty as charged, sentenced him to sixty years in prison, and assessed a $3,500 fine. This appeal followed.

### III. Legal and Factual Sufficiency

In Cedillo's first and second points, he asserts that the evidence is legally and factually insufficient to sustain his conviction for possession of a controlled substance.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

3

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Bowden v. State*, 166 S.W.3d 466, 470 (Tex. App.—Fort Worth 2005, pet. ref'd). Such

4

a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

5

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

## B. Analysis

Cedillo claims that the record does not establish that he had actual or constructive possession of any controlled substance. Possession involves the exercise of control, management, or care over the controlled substances. *See*

6

*Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Standing alone, Cedillo's presence at the location of the drugs is insufficient to establish this element. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, when combined with other evidence, presence or proximity may be sufficient to establish the requisite proof of that element. *Id.* This other evidence, or "affirmative links," are weighed not necessarily by the number of them, but by the "logical force" when taken together. *Id*. at 161–62. The links, which are not a litmus test, include (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12.

7

The State's evidence consisted of the following:

- Cedillo was the front passenger in a car stopped by officers for a traffic violation after it left a known gang house.

- Cedillo and the driver began making rapid movements and leaning forward inside the car after officers pulled over the car and activated their vehicle's red and blue lights.

- When Officer Guitterrez approached the car, he heard a "thud" to the floorboard.

- The officer tapped on the window for the driver to open the door, but the driver did not comply.

- Cedillo and the driver continued moving around inside the car, so Officer Guitterrez opened the driver's door.

- The officer saw a small chrome pistol on the floor board when the driver began exiting the car.

- Cedillo had a silver Foley knife clipped to his jacket pocket when Officer Kimball removed him from the car.

- Officer Kimball found two bags containing what was later determined to be 54.99 grams of methamphetamine "shoved" between the front passenger's seat where Cedillo was sitting and the center console next to where Cedillo's left leg had been.

- Officer Kimball found in Cedillo's right rear pocket a black leather pouch containing a digital scale of the type used for weighing narcotics, empty Ziploc-style bags commonly used for packaging narcotics for street sales, and a red straw commonly used to move methamphetamine from one baggie to another.

- Officer Kimball found a "misdemeanor amount" of marijuana in Cedillo's left front pocket.

8

In sum, the evidence indicated that Cedillo possessed the controlled substances because Cedillo was closest to the methamphetamine, he had immediate access to the narcotics, his leather pouch contained items used by narcotics dealers, and other drugs were found on his person when he was arrested. Considering the foregoing, we hold that any reasonable trier of fact could have found the essential element of control, management, or care beyond a reasonable doubt and that the evidence is therefore legally sufficient.

Likewise, considering the foregoing, we cannot say that the factfinder's determination is clearly wrong and manifestly unjust or that any conflicting evidence so clearly outweighs the evidence supporting the conviction so that the factfinder's determination is manifestly unjust. Therefore, the evidence is factually sufficient, and we overrule Cedillo's first two points.

### IV. Motion to Suppress the Vehicle's Contents

In Cedillo's third point, he asserts that the trial court erred by overruling his motion to suppress the contents of the vehicle. He argues that the stop of the car was "illegal" because Cedillo was not involved in any suspicious activity when stopped by the police.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

9

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

## B. Analysis

It is virtually axiomatic that Officers Kimball and Guitterrez had probable cause to stop the vehicle in which Cedillo was riding if they witnessed the vehicle commit a traffic violation. *See State v. Gray,* 158 S.W.3d 465, 469 (Tex. Crim. App. 2005); *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Texas Transportation Code section 545.104(b) reads in part as follows: "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104(b) (Vernon 1999); *Tucker v. State*, 183 S.W.3d 501, 507–08 (Tex. App.—Fort Worth 2005, no pet.) (affirming trial court's decision to deny motion to suppress where officer testified that driver did not signal turn until he

reached stop sign and saw officer, providing officer with probable cause to stop the vehicle due to a violation of section 545.104).

Here, the evidence revealed that the officers witnessed the driver commit a violation of this statute.

Q. Okay. And at some point did that vehicle commit a traffic violation?

A [Officer Guiterrez]. Yes.

Q. What was that violation?

A. It failed to signal prior to a hundred feet as—as it approached the intersection.

. . . .

Q. So after they committed a traffic violation, what did you do next?

A. Then me and Officer Kimball initiated a traffic stop on that vehicle[.]

. . . .

Q. And they didn't turn their turn signal on; is that correct?

A [Officer Kimball]. Correct. They failed to signal at least a hundred feet before making the left-hand turn.

We hold that the trial court did not abuse its discretion in denying the motion to suppress, and we overrule Cedillo's third point.

11

## V. Motion to Suppress Statement

In Cedillo's fourth point, he asserts that the trial court erred by overruling his motion to suppress a statement taken by Deputy R.G. Amenderez in violation of article 38.22 of the Texas Code of Criminal Procedure. Specifically, Cedillo complains that he was not given the proper warnings under the article and would not have given a statement if he had understood that he could have terminated the interview. Hence, he asserts that the trial court abused its discretion in admitting his statement.

### A. Background

Deputy Amenderez, a classification deputy assigned to the confinement division of the Tarrant County Sheriff's Office, testified that his primary responsibility is gang intelligence, and that he interviews inmates regarding their past and present gang involvement at book-in and on an update basis. Photographing inmates' tattoos is a routine part of the process. He testified that this information is used for the safety of the inmate, who might be otherwise placed with rival gang members, and for the safety of jail staff.

During Cedillo's initial classification interview during the book-in process, he claimed affiliation with the 21st Street gang. A week before the deputy testified at trial and after reviewing Cedillo's initial classification interview, Amenderez interviewed Cedillo because he was "unsure about the gang that he

12

admitted being a member of, whether it was a local Fort Worth street gang or a gang from another part of the area." During this interview, Cedillo told Amenderez that he had been inactive in the 21st Street gang for eight years and had not joined a prison gang. Amenderez testified that he then told Cedillo that the only thing he had left to do was to photograph any tattoos Cedillo might have. At that point, Cedillo stated that he was a member of the Puro Tango Blast gang since 2004. He had two tattoos related to this gang affiliation.

The remainder of Amenderez's testimony included a discussion of his job responsibilities, the reason for inmate interviews and photographs, a discussion concerning the photographs of the tattoos, and that Puro Tango Blast is a predator group, both in and out of state prisons and county jails, that commits assaults, drug offenses, and aggravated robberies. Amenderez did not testify concerning, nor did he question Cedillo about, his attorney or his pending charges, the status of which were not known by Amenderez at the time of the pretrial interview.

B. Analysis

Cedillo complains that the statements he made to Amenderez were obtained in violation of article 38.22 of the Texas Code of Criminal Procedure. Among other things, that article requires that certain admonitions be given to

13

an individual before statements that the individual makes can be used at trial. However, the article is inapplicable to "a statement that does not stem from custodial interrogation." Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005). "Interrogation refers to words, actions, or questioning by the police that the police should know are reasonably likely to elicit an incriminating response from the accused." *Pierce v. State*, 234 S.W.3d 265, 272 (Tex. App.—Waco 2007, pet. ref'd). "Questions normally attendant to arrest, custody, or administrative 'booking' procedure do not constitute 'interrogation.'" *Cross v. State*, 144 S.W.3d 521, 524 n.5 (Tex. Crim. App. 2004).

As previously discussed, Amenderez's interview with Cedillo was not for purposes of interrogation, and in fact, there was no discussion at all concerning any alleged offenses committing by Cedillo or pending charges that had resulted in his incarceration, but rather the discussion was part of the routine booking, classification, and photographing procedure. Hence, we hold that Cedillo's statements did not stem from custodial interrogation and that article 38.22 was not implicated.

Cedillo also briefly asserts that article 38.21 of the Texas Code of Criminal Procedure was violated in that his statements to Amenderez were not made "freely and voluntarily . . . without compulsion or persuasion." However,

14

Cedillo cites no evidence to support his assertion, nor is any contained in the record. We overrule Cedillo's fourth point.

## VI. Rule 403 Objection

In Cedillo's fifth point, he asserts that the trial court abused its discretion in overruling his rule 403 objection. Tex. R. Evid. 403. Cedillo argues that the testimony of Detective Reynolds during the punishment phase "was unfairly prejudicial to [Cedillo] because it was used only to inflame the jury's belief that [Cedillo] had strong ties to gang activity since he was a juvenile." Among other things, rule 403 allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Id*.

Assuming without deciding that the admission of Reynolds's testimony violated rule 403, it was clearly harmless. Cedillo objected to Reynolds's testimony on the basis of rule 403 on two occasions. The first objection followed the question, "Was there a reason this search warrant was assigned to the gang unit?" and the second objection followed the question, "Detective, was there information that you had received in order for you to execute this warrant . . . that [Cedillo] was involved in some gang activity?"

Because the error is not constitutional, we apply rule 44.2(b), which reads, "[A]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial

15

right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd). In making this determination, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson*, 967 S.W.2d at 417.

By the time Reynolds testified during the punishment phase regarding the reason for the search warrant being assigned to the gang unit and regarding information in connection with serving the warrant that Cedillo was involved in some gang activity, the following evidence had already been admitted:

- Cedillo claimed membership in the past in the 21st Street gang and later in the Puro Tango Blast gang.

- Cedillo had gang membership tattoos and photographs of these tattoos were admitted into evidence.

- Puro Tango Blast's typical gang activities.

- Cedillo had been arrested in the instant case after leaving a known gang house.

16

- Cedillo's multiple prior convictions, including possession of marijuana in 1999, interfering with public duties in 2002, and possession of methamphetamine in 2002.

- Reynolds was a member of the gang unit at the time he executed a warrant for Cedillo in March 1998, when Cedillo was sixteen.

Considering the foregoing evidence and the standard of review for non-constitutional error, any error in admitting Reynolds's testimony was harmless. Therefore, we overrule Cedillo's fifth point.

## VII.  Motion for New Trial

In Cedillo's sixth point, he asserts that the trial court erred by not granting his motion for new trial because of nonevidentiary documents that were submitted to the jury to use during deliberation and for "other reasons." Specifically, Cedillo asserts that he is entitled to a new trial because

> the verdict was decided by lot or in a manner other than fair expression of the jurors' opinion; evidence tending to establish [Cedillo's] innocence was intentionally withheld thus preventing its production at trial; the jury received other evidence after retiring to deliberate; and the jury engaged in such misconduct that [Cedillo] did not receive a fair and impartial trial.

He also alleges that a new trial was warranted because of the admission of evidence of his gang affiliation during the guilt-innocence phase of the trial and because of the denial of his motions to suppress, which we have previously addressed.  He additionally complains that the State failed to prove beyond a

17

reasonable doubt an aggravated assault case that was admitted during the punishment phase.

We review a trial court's denial of a motion for new trial under the abuse of discretion standard. *State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007). However, if a party provides no argument or legal authority to support its position, the appellate court may properly overrule the point or points as inadequately briefed. Tex. R. App. P. 38.1(h); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001); *Mosley v. State,* 983 S.W.2d 249, 256 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). And if a party does not refer the appellate court to the pages in the record where the errors allegedly occurred, the appellate court may also properly overrule those points as inadequately briefed. *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996), *overruled on other grounds, Mosley,* 983 S.W.2d at 263 n.18; *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995). Cedillo fails to make citations to the record to support his arguments that the verdict was decided by lot or in a manner other than fair expression of the jurors' opinion, that the State intentionally withheld exculpatory evidence, that gang affiliation evidence was improperly offered and admitted during the guilt-innocence phase of trial, and that the aggravated assault case was not proven beyond a

reasonable doubt. He also fails to cite legal authority to support these complaints, notwithstanding his citations to *Mullins v. State*, 37 Tex. 337, 339–40, 1873 WL 7267, at *3 (1872), and *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993), to support the statement that trial courts have the discretion to grant new trials in the interest of justice.[2] *See* Tex. R. App. P. 38.1(h); *Tong,* 25 S.W.3d at 710; *Mosley,* 983 S.W.2d at 256; *Lawton*, 913 S.W.2d at 554*.* Therefore, we overrule these portions of Cedillo's sixth point.

---

[2] Cedillo alleges that the State failed to supply the defense with allegedly exculpatory evidence, "in violation of *Brady v. Maryland*." When the State suppresses evidence favorable to the accused, due process is violated where the evidence is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To prevail, Cedillo must present evidence that (1) the State suppressed or withheld evidence; (2) the suppressed evidence would have been favorable to him; and (3) the evidence was material to his defense. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App.1992); *Nelloms v. State*, 63 S.W.3d 887, 890–91 (Tex. App.—Fort Worth 2001, pet. ref'd), *cert. denied*, 537 U.S. 960 (2002). The record reflects that the State attempted to provide the evidence to Cedillo, that neither party could access it because both lacked the proper technology to view the tape, and that neither party knew what was on the tape.

Cedillo also states that gang affiliation evidence "may be only admissible as Article 37.07 evidence in the punishment phase of trial." However, such evidence may be admitted during the guilt-innocence phase if it is relevant to motive, identity, intent, opportunity, preparation, plan, or absence of mistake. *Trevino v. State*, 228 S.W.3d 729, 734 (Tex. App.—Corpus Christi 2006, pet. ref'd). Cedillo presents us with no citation to case law or the record to support his argument beyond his reference to article 37.07.

19

With regard to his contention that the jury engaged in misconduct such that he did not receive a fair and impartial trial, apparently, the jurors inadvertently saw a document labeled "Defendant's Exhibit No. 6," which was not admitted into evidence, during the guilt-innocence phase. The exhibit is a Setting Plea Offer Acknowledgment dated September 12, 2007, in which the State recommend a plea bargain offer of ten years' confinement for the offense of aggravated assault. The exhibit does not state that Cedillo admitted any culpability for the charge. On September 14, 2007, the jurors requested the exhibit during the punishment phase, and the trial court informed them that it had not been admitted into evidence.

Cedillo alleged jury misconduct in his motion for new trial. To his motion, he attached a copy of the jury note; the trial court's response to the jury note; a letter from the prosecutor explaining what she thought had happened[3]; and

---

[3] The prosecutor's letter explains that after the punishment trial, she and the judge spoke to the jurors and the jurors asked what had happened to Defense Exhibit 6, which they had apparently viewed during the guilt-innocence phase of the trial. She stated that the foreman said, "it didn't affect our verdict or anything, but we did see it," and that she thought that the exhibit might have been passed to the jurors during Cedillo's guilt-innocence case-in-chief,

> when you passed around the information on Celedon's car registration and impound release. If Defense Exhibit 6 was lying on the end of the court reporter's desk closest to the jury box, it could have been picked up with other evidence to be published to the jury. However, I do not know for sure in what phase of the trial

20

a copy of Defendant's Exhibit 6. Cedillo's motion contained no supporting affidavits. *See Harmon v. State,* 889 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (stating that because jury misconduct constitutes a ground of attack outside the record, a motion for new trial on this basis requires the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits).

After the trial court denied his motion for new trial without a hearing, Cedillo filed a document entitled, "Bill of Exception," in which he tendered documentary evidence that he would have offered at a hearing on his motion for new trial, including an affidavit from one of the jurors stating that the jury received Defendant's Exhibit No. 6 during the guilt-innocence phase.

The State asserts that the trial court lacked jurisdiction to consider the information attached to Cedillo's bill of exception, interpreting it as an attempted, belated amendment to Cedillo's motion for new trial. *See* Tex. R. App. P. 21.4.; *Rivera-Reyes v. State*, 252 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("The trial court does not have

---

the Exhibit was passed or how it happened. The exhibit was never sent into the jury room in either phase.

jurisdiction to rule on an untimely motion or amendment."). But the trial court did not err by denying Cedillo's motion for new trial regardless of the bill of exception's nomenclature. *See* Tex. R. App. P. 21.3; *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003).

Rule 21.3(f) of the rules of appellate procedure provides that a new trial must be granted "when, after retiring to deliberate, the jury has received other evidence." Tex. R. App. P. 21.3(f). A two-prong test must then be satisfied for the defendant to obtain a new trial: (1) the evidence must have been received by the jury, and (2) the evidence must be detrimental or adverse to the defendant. *Bustamante*, 106 S.W.3d at 743.

Cedillo complains that because of the alleged jury misconduct, he "received a disproportionate sentence." However, the alleged misconduct, if any, occurred during the guilt-innocence phase, not during the sentencing phase. By the conclusion of evidence during the sentencing phase, the jury was well-informed about the events leading to the State's plea bargain offer on the aggravated assault charge that was the subject of the plea bargain offer. And Cedillo has not explained how the evidence, one of his own exhibits, was detrimental or adverse to him. Therefore, Cedillo was not entitled to a new trial under rule 21.3(f), nor to a new trial under rule 21.3(g), which requires a new trial be granted "when the jury has engaged in such misconduct that the

22

defendant did not receive a fair and impartial trial." Tex. R. App. P. 21.3(f), (g).

We overrule the remainder of Cedillo's sixth point.

## VIII. Conclusion

Having overruled all of Cedillo's points, we affirm the trial court's judgment.


                                    BOB MCCOY
                                    JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 18, 2008

23